IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**ANTHONY ST. FORT,**
**A-076-988-443,**

    Petitioner,

vs.                                                       Case No. 4:15cv471-WS/WCS

**LORETTA LYNCH, et al.,**

    Respondents.

    _____/

## ORDER AND AMENDED REPORT AND RECOMMENDATION[1]

Petitioner, proceeding *pro se*, has initiated this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on Setember 30, 2015.  ECF No. 1.  Petitioner is a native and citizen of St. Lucia who is currently detained at the Wakulla County Detention Center, having been taken into custody by Immigration and Customs Enforcement (ICE) on March 30, 2015.  ECF No. 1 at 3.  Petitioner has remained in

---

[1] On July 26, 2016, Respondents filed a motion for leave to supplement the record. ECF No. 18.  That motion is granted and the supplemental materials have been reviewed.

custody since that time. Petitioner's order of removal was entered well before he was taken into custody, June 17, 2003, and because Petitioner did not appeal the order,[2] it became final on that date. *Id.* at 5. The petition alleges that Respondents have been unable to remove him to St. Lucia (or any other country),[3] and despite his efforts to facilitate his deportation, Petitioner states that the St. Lucia Consulate has failed to issue any travel documents. *Id.* at 5. Petitioner seeks release from detention under Zadvydas v. Davis, 533 U.S. 678 (2001), claiming the presumptively reasonable period for removal has passed and it is not significantly likely that he will be removed in the reasonably foreseeable future. *Id.* at 6-7.

**The Answer**

In late January 2016, Respondents filed an answer to the petition asserting that Petitioner's custody is lawful because his removal *is* significantly likely to occur in the reasonably foreseeable future and he is a

---

[2] Respondents advise that Petitioner "waived his right to appeal" the removal order. ECF No. 11 at 2.

[3] At one point in the petition, it is stated that Respondents will be unable to release him to Jamaica, ECF No. 1 at 5, but that is a scrivener's error. Elsewhere, the petition is clear in alleging that his "removal to St. Lucia or any other country is not significantly likely to occur" because the St. Lucian government will not issue travel documents for Petition. *Id.* at 7.

"risk to the community." ECF No. 11 at 1. Respondents state that a travel document has been requested from St. Lucia officials and, considering the fact that Petitioner was previously removed to St. Lucia, ICE contends that Petitioner's removal will be successful. *Id.* at 3-4. ICE further argues that "there were numerous successful removals to St. Lucia in 2015" and contends that it "is merely awaiting the requisite travel documentation to facilitate his removal" and contends it is "significantly likely" to occur "in the reasonably foreseeable future." *Id.* at 4.

**Petitioner's Responses**

Petitioner filed two responses to the answer. The first, ECF No. 13, was filed in early February 2016, and explains that Petitioner has been in the United States since 1972. He contends that he has been in detention (at that point) for over ten months and argues that while Respondents assert they have requested travel documents, none have been issued. ECF No. 13 at 2. Petitioner argues "there is no evidence when, if ever, travel documents will be issued." *Id.* Petitioner claims ICE has not met its burden and he should be released. *Id.* He additionally argues that, accepting that ICE has removed 12 detainees to St. Lucia in the past year, it "did not take a year to do so." *Id.* at 3. Petitioner questions ICE's

interpretation of the "foreseeable future" and contends that the six months presumptively reasonable removal period has expired and he should be released. *Id.*

Petitioner also argues that ICE "cannot seriously contend that" he is too dangerous to be released. *Id.* at 2. Petitioner points out there is no evidence of dangerousness beyond his criminal conviction, which he contends does not provide sufficient reason to extend his presumptively reasonable detention period under Zadvydas. *Id.* Moreover, Petitioner argues that C.F.R. § 241.14 sets out regulations which govern special review procedures for alien detainees who fall into one of four special categories: (1) alien has a highly contagious disease (2) serious adverse foreign policy consequences would result from the alien's release, (3) security or terrorist concerns; or (4) the alien is determined to be specially dangerous. *Id.* at 3. Petitioner states that he "does not fall into any of these categories, and I.C.E. has not initiated any of the procedures required" in those circumstances. *Id.* Thus, because ICE has not complied with its own procedures to show he is "specially dangerous," Petitioner contends the argument "should carry no weight whatsoever . . . ." *Id.*

Petitioner's second response, ECF No. 14, was filed on May 26, 2016. Petitioner advises that the Consulate General of St. Lucie has denied the request for a travel document. *Id.* at 2. The Consulate advised that it was unable "to locate any next of kin for" Petitioner and could not "make contact with any of his relatives on the island who would accommodate him with a place to stay." *Id.* at 2.

**Respondents' Reply**

Respondents advise that after learning of the denial letter provided in Petitioner's response, ICE has obtained the involvement of the State Department. ECF No. 15 at 2. On "June 9, 2016, the State Department engaged the newly elected officials of St. Lucia." *Id.* "ICE maintains that, notwithstanding the recent denial letter, Petitioner's removal is significantly likely in the reasonably foreseeable future, and that the Petition should therefore be dismissed." *Id.* at 2-3.

**Supplemental Filings**

On June 27, 2016, a Report and Recommendation, ECF No. 16, was entered in this case based on the filings mentioned above and recommending Petitioner be released. The following day, Petitioner filed a third reply, ECF No. 17, again arguing that there has not been a sufficient

showing that it is "significantly likely" that Respondents will remove him in the reasonably foreseeable future. *Id.* at 2. Petitioner pointed out that he had "been detained for more than fifteen months" and two letters had been issued "refusing to issue travel documents." Thus, Petitioner requested his petition be granted and he be released. Because Petitioner's third reply did not change the recommendation, it went unaddressed.

On July 26, 2016, Respondents filed a motion requesting the Court consider a supplemental declaration received from an ICE official. ECF No. 18. The declaration "explains that on July 15, 2016, ICE received a letter from the Consulate General of Saint Lucia advising that a travel document will be issued for Petitioner upon receipt of an itinerary and a $45.00 travel document fee." ECF No. 18 at 2; *see* ECF No. 18-1 (Declaration of Ryan Clark). Respondents now anticipate that Petitioner can be removed "to St. Lucia within the next thirty days." ECF No. 18 at 2. Attached to the motion is a letter from the Consulate General of Saint Lucia advising that travel documents for Petitioner would be issued upon receipt of Petitioner's itinerary, two passport size photographs, and payment of a $45 fee. ECF No. 18-2.

The motion to permit consideration of the supplemental evidence, ECF No. 18, is granted.  That evidence requires amending the recommendation made in the initial Report and Recommendation, ECF No. 16.

**Background**

Petitioner claimed he has been in the United States since his entry on March 18, 1972.  ECF No. 1 at 4.  Respondents assert that Petitioner has been in the United States since entry on "April 14, 1987[, in] Miami, Florida as a non-immigrant visitor for pleasure."  ECF No. 11, Ex. A at 1.  At any rate, Petitioner was convicted in October 1989 of robbery and possession of a weapon, ECF No. 11, Ex. A at 1, and in July 1999, he was convicted of possession of cocaine and possession of marijuana.  *Id.*  ICE determined that Petitioner was "deportable" and removal proceedings were initiated.  *Id.*  Petitioner was ordered removed by an Immigration Judge on April 12, 2000, and Petitioner waived his right to appeal the order.  *Id.*  On July 14, 2000, Petitioner was removed from the United States to St. Lucia.  *Id.* at 2.

On an unknown date and location, Petitioner re-entered the United States.  He was convicted of aggravated assault with a weapon on May 18, 2003, and sentenced to 10 years incarceration.  ECF No. 11, Ex. A at 2.

Petitioner was served with a Notice of Intent/Decision to Reinstate Prior [Removal] Order and following his release from prison, Petitioner was taken into ICE custody on January 3, 2012. *Id.* Petitioner was released from custody on December 13, 2012,[4] to an "Order of Supervision after receiving a denial letter from the Consulate of St. Lucia." *Id.*

On April 4, 2014, Petitioner was convicted of robbery and again sentenced to prison. ECF No. 11, Ex. A at 2. Upon his release, Petitioner was taken into the custody of ICE on February 4, 2015. *Id.* A travel document request was sent to the Consulate of St. Lucia on April 2, 2015. *Id.* In May 2015, ICE was advised that St. Lucian officials were "awaiting confirmation of the Petitioner's identity . . . ." *Id.* In July, and again in early September 2015, the Consulate advised that the travel document request was still pending. *Id.* at 3. On September 23, 2015, a consulate officer

---

[4] ICE advises that in December 2015, Petitioner's "original birth certificate" was obtained "to address the previous discrepancy concerning his birth certificate that occurred in December 2012." ECF No. 11 at 3. The alleged discrepancy with the birth certificate has not been explained. Attached to the petition was a copy of correspondence from the Embassy of St. Lucia which stated that "gross" discrepancies appeared on Petitioner's Baptism Certificate which was "produced for the last travel document request in 2000." ECF No. 1 at 13. St. Lucian officials were "not entirely convinced that Mr. St. Fort was actually born in Saint Lucia." *Id.* Thus, in December 2012, the Embassy advised that due to the country's "reorganizing its birth record system" and the backup entailed in that process, Petitioner's detention should not "be deemed legally as a 'reasonable period'" because he had already been detained "for over one (1) year . . . ." *Id.*

reported "that he still ha[d] not received verification from St. Lucia . . . ." *Id.* By October 2015, a consulate officer said he was "in the process of following up on this case because it was brought to his attention that the [Petition] had previously been denied" a travel document, although he could not provide a date. *Id.* In November, ICE was informed by the consulate officer that he was "still waiting for his embassy to make a decision." *Id.* at 4. However, the officer said he expected St. Lucia would deny travel documents since they were previously denied. *Id.* ICE then "sent an updated travel document request with a copy of the newly issued standalone birth certificate." *Id.* On December 2, 2015, ICE submitted a new travel document request letter and sent a copy of a "newly issued standalone birth certificate." *Id.*

It now appears that Saint Lucia has agreed to issue travel documents for Petition. ECF No. 18-2. The Declaration of Deportation Officer Ryan Clark demonstrates that "ICE expects to facilitate Petitioner's removal from the United States to Saint Lucia within the next thirty (30) days." ECF No. 18-1.

**Analysis**

Because Petitioner is not challenging a final order of removal, but only seeking release from detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), this Court has jurisdiction over this § 2241 habeas petition.  In Zadvydas, the Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and the issue of whether indefinite detention of a removable alien was authorized.

Immigration law directs that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . ."  8 U.S.C. § 1231(a)(1)(A).  During that 90 day removal period, "aliens must be held in custody."  Zadvydas, 533 U.S. at 683, 121 S. Ct. at 2495 (citing 8 U.S.C.  § 1231(a)(2)).  After the 90-day removal period, the statute permits the Government "to detain an alien who still remains here or release that alien under supervision."  533 U.S. at 683, 121 S. Ct. at 2495 (citing 8 U.S.C. § 1231(a)(6)).  That statute provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (emphasis added).  Petitioner was ordered removed from the United States in April of 2000.  Although the removal order has not been submitted, it is apparent that Petitioner was deemed removable pursuant to § 1227(a)(2) based on his criminal convictions.

The Supreme Court made clear in Zadvydas that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." Id., at 689, 121 S. Ct. at 2498.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id., at 699, 121 S.Ct. at 2503.  For the sake of uniformity, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005) (quoting Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505).[5]  Accordingly, under Clark and Zadvydas, when an

---

[5] In Clark, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens, holding that the period of time reasonably necessary to effect

alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").[6]

Zadvydas established a burden-shifting analysis and, after the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Thereafter, "the Government must respond with evidence sufficient to rebut that showing." Id.

---

removal should not be any longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727. The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6).

[6] An alien must be detained during the "removal period." 8 U.S.C. § 1231(a)(2).

In this case, Petitioner met his initial burden under <u>Zadvydas</u> based on his allegations in the petition. ECF No. 1 at 5. Petitioner said he had "cooperated fully" to efforts to effectuate his removal, but despite those efforts, ICE was not likely to remove him "in the reasonably foreseeable future." *Id.*, at 5, 6.

The burden shifted to Respondents to rebut that showing and demonstrate there *is* a significant likelihood of removal in the reasonably foreseeable future. Respondents have now shown that Petitioner's removal *is likely*. ECF No. 18. Accordingly, Petitioner is not entitled to the relief requested. It is recommended that the petition be denied without prejudice. Should Petitioner not be removed, Petitioner should notify this Court.[7]

Accordingly, it is

**ORDERED:**

1. Respondents' motion requesting the Court consider supplemental evidence, ECF No. 18, is **GRANTED**.

2. In light of that evidence, ECF No. 18, the initial Report and Recommendation, ECF No. 16, is **VACATED**.

---

[7] It would be beneficial for Respondents to file proof of Petitioner's removal, when that occurs.

## RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the petition for writ of habeas corpus, ECF No. 1, filed by **Anthony St. Fort** under 28 U.S.C. § 2241, be **DENIED** without prejudice.

**IN CHAMBERS** at Tallahassee, Florida, on July 27, 2016.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this Report and Recommendation.  A copy of objections shall be served upon all other parties.  If a party fails to object to the findings or recommendations made herein as to any particular claim or issue, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.  A party may respond to another party's objections within 14 days after being served with a copy thereof.**